**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

AMERICAN TRUCKING ASSOCIATIONS,
INC.,*

    *Plaintiff-Appellant,*

    v.

THE CITY OF LOS ANGELES, THE
HARBOR DEPARTMENT OF THE
CITY OF LOS ANGELES, THE
BOARD OF HARBOR
COMMISSIONERS OF THE CITY OF LOS
ANGELES, THE CITY OF LONG
BEACH, THE HARBOR DEPARTMENT
OF THE CITY OF LONG BEACH, and
THE BOARD OF HARBOR
COMMISSIONERS OF THE CITY OF
LONG BEACH,

    *Defendants-Appellees.*

COALITION FOR CLEAN AIR, INC.;
NATURAL RESOURCES DEFENSE
COUNCIL; SIERRA CLUB,
 *Defendant-intervenors-Appellees.*

No. 09-55749

D.C. No.
2:08-cv-04920-CAS-
CT

OPINION

Appeal from the United States District Court
for the Central District of California
Christina A. Snyder, District Judge, Presiding

 *The plaintiff American Trucking Associations, Inc., and the City of Long Beach defendants have settled their controversies pending this appeal and are no longer parties. We consider this appeal only in relation to the City of Los Angeles defendants' and plaintiff's claims relating to the Port.

2915

Argued and Submitted
November 4, 2009—Pasadena, California

Filed February 24, 2010

Before: Myron H. Bright,** Senior Circuit Judge,
Harry Pregerson and Ronald M. Gould, Circuit Judges.

Opinion by Judge Bright

---

**The Honorable Myron H. Bright, Senior United States Circuit Judge
for the Eighth Circuit, sitting by designation.

## COUNSEL

Robert Digges, Arlington, Virginia, Christopher C. McNatt Jr., Pasadena, California, W. Stephen Cannon, Seth D. Greenstein, and Stephen S. Anderson Jr., Washington, DC, for plaintiff-appellant.

Steven S. Rosenthal, Alan K. Palmer, David L. Cousineau, Susanna Y. Chu, Washington, DC, Carmen A. Trutanich, Thomas A. Russell, Joy M. Crose, Simon M. Kann, San Pedro, California, for City of Los Angeles defendants-appellees.

**OPINION**

BRIGHT, Circuit Judge:

In this extensive litigation, American Trucking Associations, Inc. ("ATA") seeks preliminary injunctive relief against certain regulations imposed by the Port of Los Angeles, a local governing body, upon motor carriers entering the Port premises. ATA contends these regulations are preempted by federal law. The district court denied injunctive relief in part, determining that the Port regulations in question are authorized under the motor vehicle safety exception in the federal law. ATA appeals, and we affirm with one exception.

## I.  BACKGROUND

This litigation has been ongoing since July 28, 2008, when ATA filed its complaint against all defendants. ATA contends that certain mandatory concession agreements between the Port of Los Angeles ("POLA")[1] and motor carriers impose requirements on the truckers, and the execution of those agreements is required for any trucker to enter the Port premises. ATA asserts that provisions of the concession agreements are preempted by the Federal Aviation Administration Authorization Act of 1994 ("FAAA Act"),[2] and that the concession agreements unduly burden motor carriers' ability to engage in interstate commerce. The defendants, POLA, claim that these provisions qualify under the motor vehicle safety exception to the FAAA Act.[3]

To put the present stage of this litigation and this appeal in

---

[1] We shall refer to the City of Los Angeles defendants as the Port of Los Angeles ("POLA") encompassing the City of Los Angeles and its agency responsible for the operation of the Port.

[2] 49 U.S.C. § 14501(c).

[3] 49 U.S.C. § 14501(c)(2)(A).

context, we refer to prior proceedings in the district court and in this court.

On June 30, 2008, ATA moved for a preliminary injunction restraining implementation of the Port's mandatory concession agreements under the FAAA Act and the Supremacy Clause of the Constitution. The district court denied relief. The court determined that while the concession agreements "related to a price, route, or service" of motor carriers which would generally render them preempted under the FAAA Act, ATA was unlikely to succeed on the merits because the concession agreements likely fell under the FAAA Act's motor vehicle safety exception and therefore ATA had not established a proper basis for preliminary injunctive relief. *See Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 577 F. Supp. 2d 1110 (C.D. Cal. 2008) ("*Am. Trucking I*").

ATA appealed to this court. We reversed and remanded, explaining that many provisions of the concession agreements were likely preempted by the FAAA Act. *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046 (9th Cir. 2009) ("*Am. Trucking II*").

On remand, the district court, following this court's order in *Am. Trucking II*, determined some of the concession agreement provisions were likely preempted[4] while others were not. *Am. Trucking III*, 2009 WL 1160212. ATA again appeals, arguing the district court (1) erred in concluding several provisions were not preempted by the FAAA Act; (2) erred in concluding that POLA has authority to preclude motor carri-

---

[4]On remand, the district court concluded that the following provisions did not fall within the motor vehicle safety exception: independent operator phase-out, hiring preferences, financial disclosure requirement, health insurance requirement, compliance with truck routes and parking restrictions, mandatory concession fees, and Clean Truck Tariff program. *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, No. CV 08-4920 CAS (CTx), 2009 WL 1160212, at *7-11, 14, 17 (C.D. Cal. Apr. 28, 2009) (*Am. Trucking III*).

ers from entering the Port for failing to comply with the concession agreements; and (3) abused its discretion by not enjoining enforcement of the concession agreements in their entirety. As we have noted, we affirm except as to one provision of the concession agreements.

II.

**[1]** The law at issue in this appeal is the FAAA Act. We discussed the FAAA Act in great length in our prior opinion. *See Am. Trucking II*, 559 F.3d at 1053-55. The FAAA Act preempts states from enacting or enforcing "a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier." 49 U.S.C. § 14501(c)(1). The FAAA Act includes an exception from preemption for motor vehicle safety, stating that this Act:

> shall not restrict the safety regulatory authority of a State with respect to motor vehicles, the authority of a State to impose highway route controls or limitations based on the size or weight of the motor vehicle or the hazardous nature of the cargo, or the authority of a State to regulate motor carriers with regard to minimum amounts of financial responsibility relating to insurance requirements and self-insurance authorization.

49 U.S.C. § 14501(c)(2)(A). "We review the district court's decision regarding preemption and its interpretation and construction of a federal statute de novo." *Am. Trucking II*, 559 F.3d at 1052 (citing *Californians for Safe & Competitive Dump Truck Transp. v. Mendonca*, 152 F.3d 1184, 1186 (9th Cir. 1998)).

ATA and POLA agree that the concession agreements are regulations which "relate[ ] to a price, route, or service." *See* 49 U.S.C. § 14501(c)(1). However, the parties disagree as to whether the motor vehicle safety exception applies to the pro-

visions of the concession agreements that the district court determined were not preempted by the FAAA Act.

A.

ATA disputes that the following provisions of the concession agreements fall within the FAAA Act's motor vehicle safety exception: (1) requiring that concessionaires be licensed motor carriers in good standing; (2) requiring that concessionaires use only "permitted trucks;" (3) mandating that motor carriers are solely responsible for their drivers and employees; (4) requiring that motor carriers prepare a truck maintenance plan and holding motor carriers responsible for vehicle condition and safety; (5) mandating that motor carriers keep records of driver enrollment in the Transportation Worker Identification Credential ("TWIC") program; (6) requiring that motor carriers ensure that each truck entering and leaving Port property is equipped with a means of Clean Trucks Program Compliance Verification; (7) ensuring that motor carriers comply with federal, state, municipal, and port security laws; and (8) requiring that motor carriers update and maintain accurate data in the drayage truck registry, concession registry, and driver registry and allowing POLA to inspect motor carriers' property and records regarding compliance with the concession agreements.

**[2]** After reviewing these eight provisions de novo, we agree with the district court's well-reasoned opinion that specifically analyzes each of the provisions and considers whether the Port was acting out of safety concerns when it enacted each requirement. We reject ATA's contentions that the provisions are not safety-related simply because they duplicate already-existing federal laws. Duplication of existing policies does not negate POLA's intent in adopting these requirements. Evidence in the record from POLA officials establishes that POLA adopted these provisions out of concern for safety at the Port. Although we do not merely take POLA at its word, *see ATA II*, 559 F.3d at 1054, upon close

scrutiny of the provisions, we conclude that the provisions are genuinely responsive to motor vehicle safety and are not preempted by the FAAA Act.

## B.

**[3]** ATA also argues that the district court erred in concluding that an additional requirement, that drayage trucks display identifying placards with a telephone number, fell within the motor vehicle safety exception. ATA asserts that 49 U.S.C. § 14506(a) precludes states and local agencies from requiring motor carriers to display identification other than that required by the Secretary of Transportation.

**[4]** We agree with ATA that § 14506(a) does not contain a safety exception. We vacate the district court's order regarding this provision and remand for further consideration in connection with any further proceeding seeking permanent injunctive relief.

## III.

ATA argues that the district court erred in concluding that POLA has authority to preclude motor carriers from entering the Port for failing to comply with the concession agreements' safety requirements. Relying on *Castle v. Hayes Freight Lines, Inc.*, 348 U.S. 61 (1954), ATA asserts that POLA cannot suspend a motor carrier's interstate rights as a means of enforcing safety regulations via the concession agreements.

**[5]** The Supreme Court in *Castle* considered whether a state may bar interstate motor carriers from using state roads as punishment for repeated violations of state highway regulations. *Castle*, 348 U.S. at 62. The Court explained that the Federal Motor Carrier Act "adopted a comprehensive plan" that "was so all-embracing that former power of states over interstate motor carriers was greatly reduced. No power at all was left in states to determine what carriers could or could not

operate in interstate commerce." *Id.* at 63. Instead, the federal government had the exclusive power to make this decision by issuing certificates of convenience and necessity. *Id.* The Court stated that Congress narrowly limited the power to revoke or suspend an outstanding certificate by giving the Interstate Commerce Commission ("ICC") the sole power to revoke a motor carrier's certificate for willfully refusing to comply with the laws. *Id.* at 63-64. The ICC could only suspend or revoke a certificate "after a hearing and a finding that a carrier has willfully failed to comply with the provisions of the Motor Carrier Act." *Id.* at 63. The Court reasoned that "[u]nder these circumstances, it would be odd if a state could take action amounting to a suspension or revocation of an interstate carrier's commission-granted right to operate." *Id.* at 64.

The district court concluded that *Castle* did not control because it was decided forty years before the FAAA Act was adopted, the FAAA Act includes a motor vehicle safety exception to preemption, and *Castle* concerned a significantly different factual scenario than the present case. *Am. Trucking III*, 2009 WL 1160212, at * 3. The district court explained that Castle specifically considered a state's right to punish a motor carrier for repeated violations of safety standards under the Federal Motor Carrier Act, the predecessor to the FAAA Act. *Id.*

**[6]** We agree with the district court that *Castle* concerned an entirely different Act, the Federal Motor Carrier Act, and its relevance is limited to the facts at issue in that case. The Federal Motor Carrier Act granted only the ICC, the agency charged with issuing certificates of convenience, the power to revoke motor carriers' certificates of convenience. The ICC no longer regulates motor carriers.[5] For purposes of a preliminary injunction, we conclude that *Castle* does not establish the

---

[5]*See* Interstate Commerce Commission Termination Act of 1995, Pub. L. No. 104-88, § 101, 109 Stat. 803, 804 (1995) (terminating the ICC).

likelihood of ATA succeeding on the merits on this issue. However, this issue is not finally resolved and may be reconsidered in further proceedings for a permanent injunction.

IV.

In *Am. Trucking II*, we acknowledged that the concession agreements contain severability provisions which state that if any part of the agreement is found unenforceable, "such determination shall only apply to the specific provision and the remainder of this Concession shall continue in full force and effect." We previously remanded the case for the district court to consider whether preempted provisions of the concession agreements could be severed from the remainder of the agreements or whether the court should enjoin the enforcement of the concession agreements in their entirety. *Am. Trucking II*, 559 F.3d at 1060. On remand, the district court concluded that enjoining the preempted provisions of the concession agreements would not prevent the remaining provisions from functioning effectively and that the concession agreements were severable because the provisions were distinctly separated by topic. *Am. Trucking III*, 2009 WL 1160212, at * 20.

**[7]** On appeal, ATA argues the district court erred in not enjoining enforcement of the concession agreements entirely. We disagree. The provisions in the concession agreements that are not preempted by the FAAA Act are distinctly separated by topic from the provisions which are preempted. Omitting the preempted provisions from the concession agreements does not require the district court to "examine and rewrite most of the statute." *See United States v. Manning*, 527 F.3d 828, 840 (9th Cir. 2008) (declining to "unscrambl[e] the egg" where excising preempted provisions from the state's act would require the district court to rewrite most of the statute). We affirm the district court's decision to sever the preempted provisions of the concession agreements.

## V.

**[8]** Accordingly, we **AFFIRM** the district court's order denying injunctive relief in part to ATA with one exception noted in the text.[6]

---

[6]We deny ATA's pending motion to assign this case to the same panel which decided *Am. Trucking II.*