# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CALIFORNIA TOW TRUCK
ASSOCIATION,
  *Plaintiff-Appellant-Cross-Appellee,*

v.

CITY AND COUNTY OF SAN
FRANCISCO,
         *Defendant-Appellee-*
         *Cross-Appellant.*

Nos. 11-15040
     11-15041

D.C. No.
3:10-cv-03184-CRB

OPINION

Appeal from the United States District Court
for the Northern District of California
Charles R. Breyer, District Judge, Presiding

Argued and Submitted
February 17, 2012—San Francisco, California

Filed August 27, 2012

Before: Raymond C. Fisher and Sandra S. Ikuta,
Circuit Judges, and J. Michael Seabright,* District Judge.

Opinion by Judge Seabright

---

*The Honorable J. Michael Seabright, United States District Judge for
the District of Hawaii, sitting by designation.

9687

---

**COUNSEL**

Patrick J. Whalen, Law Offices of Brooks Ellison, Sacramento, California, for plaintiff-appellant-cross-appellee California Tow Truck Association.

Vince Chhabria, Deputy City Attorney, San Francisco, California, for defendant-appellee-cross-appellant City and County of San Francisco.

---

**OPINION**

SEABRIGHT, District Judge:

In two comprehensive ordinances, the City and County of San Francisco requires tow truck drivers to obtain permits to

operate in San Francisco, and towing firms to obtain permits to conduct business within San Francisco. The ordinances include numerous conditions and prerequisites for obtaining or maintaining towing permits. The California Tow Truck Association ("CTTA") filed this action seeking to invalidate the two ordinances, primarily arguing that the entire "permit scheme" (as it calls both ordinances) is preempted by federal law. The district court upheld the permit scheme for "non-consensual" towing, but enjoined enforcement against those doing exclusively "consensual" towing and against tow truck drivers simply "passing through" San Francisco. We now face cross-appeals.

The CTTA's challenge to the entire permit scheme necessarily encompasses all of the permit scheme's components — each of which may (or may not) be preempted. The district court analyzed the permit scheme in the way the parties presented the scheme, as a whole, but without specifically addressing its individual provisions. In so doing, however, the district court ran afoul of *American Trucking Associations v. City of Los Angeles*, 559 F.3d 1046 (9th Cir. 2009), which requires "examining the specific provisions" of the permit scheme. *Id.* at 1057. Accordingly, we vacate and remand for further proceedings.

## I.  *BACKGROUND*

### A.  The Permit System

Article 30 of the San Francisco Police Code regulates "tow car drivers." *See* S.F., Cal., Police Code art. 30, §§ 3000-13. Similarly, Article 30.1 of the S.F. Police Code regulates "tow car firms." *See id.* art. 30.1, §§ 3050-65.[1] Together, Articles

---

[1]We use "tow truck" and "tow car" interchangeably, although there are slight immaterial differences in "tow truck" definitions.

Originally enacted in 1973, Article 30 provides that " 'tow car' is defined as that term is defined in the Vehicle Code of the State of Califor-

30 and 30.1 set forth a comprehensive regulatory regime requiring tow truck drivers and towing firms to obtain permits to operate and conduct business in San Francisco.[2] Together, we refer to Articles 30 and 30.1 as the "Permit System."

### 1.  Article 30 — Permit Requirements for Tow Truck Drivers

Under Article 30, "[n]o person shall drive or operate a tow car within the City and County of San Francisco without first obtaining a permit from the Chief of Police." S.F. Police Code § 3000. To obtain a permit, tow truck drivers provide identify-

---

nia." S.F. Police Code § 3001. California's corresponding definition of "tow car," however, was amended in 1988 to substitute "truck" for "car" throughout, *see* 1988 Cal. Legis. Serv. 924 (West). California now defines "tow truck" as:

> a motor vehicle which has been altered or designed and equipped for, and primarily used in the business of, transporting vehicles by means of a crane, hoist, tow bar, tow line, or dolly or is other-wise primarily used to render assistance to other vehicles. A "roll-back carrier" designed to carry up to two vehicles is also a tow truck. A trailer for hire that is being used to transport a vehi-cle is a tow truck. "Tow truck" does not include an automobile dismantlers' tow vehicle or a repossessor's tow vehicle.

Cal. Veh. Code § 615(a).

[2]California also extensively regulates tow trucks, firms, and operations. *See, e.g.*, Cal. Veh. Code §§ 22513 (regarding stopping of tow trucks on highways, and soliciting of services at an accident scene), 22651.07 (regarding charges for towing or storage), 22658 (regarding removal of vehicles from private property), 25253 (regarding warning lights), 27700 (prescribing required equipment for tow trucks), and 29004 (towing and loading equipment).

There is, however, no specific state-level tow truck permitting system. Rather, the state has delegated specific tow truck licensing to local enti-ties. *See id.* § 21100 ("Local authorities may adopt rules and regulations by ordinance or resolution regarding the following matters: . . . (g)(1) Licensing and regulating the operation of tow truck service or tow truck drivers whose principal place of business or employment is within the jurisdiction of the local authority . . . .").

ing information (*e.g.*, name, residence, height, weight, birth date, employer, drivers license number), disclose any criminal arrests, and give "[s]uch other information . . . reasonably necessary . . . to arrive at a fair determination as to whether the terms of the ordinance have been complied with." *Id.* § 3002. Applicants are fingerprinted, provide passport-sized photographs, and pay a filing fee. *Id.* § 3003. They must also provide a letter from an employer. *Id.*

Upon receipt of an application, the Chief of Police is to investigate "without unnecessary delay," and issue a permit, unless the applicant:

> (a) Within four years prior to the date of application, has been convicted of burglary, robbery, theft, receipt of stolen property, breaking or removing parts from a vehicle, malicious mischief to a vehi-cle[,] unlawful use or tampering by bailee of a vehi-cle, or altering a vehicle identification number; or

> (b) Within four years prior to the date of application, has acted in violation of the criminal statutes referred to in Subsection (a) above; or

> (c) Has intentionally falsified any statement con-tained in his application.

*Id.* § 3004. The tow truck driver must have the permit "at all times while driving or operating" a tow truck, and show it on demand to any peace officer. *Id.* § 3007. A permit lasts for a year, and is renewable annually upon payment of the annual fee.[3] *Id.* § 3008. It can be revoked if, after a hearing, the Chief of Police "finds that grounds exist which would have consti-tuted just cause for refusal to issue such permit." *Id.* § 3011. "Violation of Sections 3000 [driving or operating a tow truck

---

[3]As of July 2012, the initial permit fee for a tow truck driver was $570, with an annual license fee of $34. *See* S.F. Police Code §§ 2.26-.27.

within San Francisco without a permit] or 3007 [requiring possession of a permit while driving or operating a tow car] . . . shall be a misdemeanor, punishable by a fine not to exceed $500, or by imprisonment in the County Jail for a term of not more than six months . . . ." *Id.* § 3012. Article 30 also contains a severability clause, indicating that if any part of it is declared unconstitutional or invalid, such a declaration does not affect the validity of the remaining portions. *Id.* § 3013.[4]

## 2. *Article 30. 1 — Permit Requirements for Towing Firms*

Similar to Article 30, Article 30.1 requires a "tow car firm" to register and obtain a permit to "engage in or conduct business as a tow car firm within the City and County of San Francisco." *Id.* § 3050. Originally enacted in 1997, it defines a "tow car firm" or "towing firm" as "[a]ny person, firm, partnership, association, corporation, or any other group or combination acting as a unit, excepting [certain governmental entities], engaged in the business of transporting, removing, or storage of motor vehicles, including the owner/operator of any tow car as herein defined." *Id.* § 3051(1).

An applicant[5] provides the police department identifying

---

[4]Section 3013 provides:

> If any section, subsection, subdivision, paragraph, sentence, clause or phrase of this Article or any part thereof is for any reason held to be unconstitutional or invalid or ineffective by any court of competent jurisdiction, such decision shall not affect the validity or effectiveness of the remaining portions of this Article or any part thereof. The Board of Supervisors hereby declares that it would have passed each section, subsection, subdivision, paragraph, sentence, clause or phrase thereof irrespective of the fact that any one or more sections, subsections, subdivisions, paragraphs, sentences, clauses or phrases be declared unconstitutional or invalid or ineffective.

[5]With respect to a partnership or corporation, "applicant" is defined as "at least two of the partners" and "at least two corporate officers" for purposes of this section. *See* S.F. Police Code § 3051(3).

information such as name, residence, telephone number, and driver's license number, as well as the businesses' names and addresses. *Id.* § 3052(1) & (2). The application must also provide specific information (*e.g.*, the license plate number, year, make, model, and color) for each tow truck to be operated by the business. *Id.* § 3052(3). It must describe the applicant's business plan and proposed services, including days and hours of operation, storage locations of towed vehicles, and a system for handling complaints that is acceptable to the Chief of Police. *Id.* § 3052(4). It must also disclose the firm's tow truck drivers and permit numbers, and provide evidence of a minimum level of insurance. *Id.* § 3052(5) & (6). Further, an applicant must disclose "all crimes of which the applicant has been convicted, plead guilty, or plead no contest," *id.* § 3052(7), and must submit a complete set of fingerprints taken by the San Francisco Police Department, fingerprinting and filing fees, and two recent color photographs, *see id.* § 3053.

Upon application, tow firm permits are granted unless the Chief of Police finds that:

> (1) [The] [a]pplicant does not possess or cannot obtain the minimum amount of bodily injury and/or property damage insurance as required by the Chief of Police rules; or
>
> (2) The applicant does not possess the requisite tow car equipment or facilities reasonably necessary to operate a tow car business in such a manner as to adequately protect vehicles of the public that are towed and stored from damage or theft; or
>
> (3) The applicant has been convicted of theft, petty theft, theft of a vehicle, breaking or removing vehicle parts, malicious mischief to vehicle, check fraud, credit card fraud, driving under the influence of alcohol or drugs, vehicular manslaughter, reckless driv-

ing bodily injury, any sex offense which would cause the applicant to be registered as a sex offender, any unlawful carrying, use or possession of a fire-arm, any assault or battery (misdemeanor or felony), kidnapping, arson, extortion, murder, possession of alcoholic beverage, opened alcohol container, mari-juana, or narcotic drug while driving, bailee tamper-ing; or

(4) The applicant has knowingly falsified any state-ment contained in his application, or has knowingly omitted information in his application which could result in a denial of the permit; or

(5) The applicant does not possess or cannot obtain an FDIC-authorized bank credit card machine.

*Id.* § 3054. Likewise, the Chief of Police may suspend or revoke a tow firm permit for those same reasons, or for the following additional reasons:

(1) Within five years prior to the date of application the applicant has been convicted of any of the fol-lowing crimes:

Theft, petty theft, theft of a vehicle, breaking or removing vehicle parts, malicious mischief to vehi-cle, check fraud, credit card fraud, driving under the influence of alcohol or drugs, vehicular manslaugh-ter, reckless driving bodily injury, any sex offense which would cause the applicant to be registered as a sex offender, any unlawful carrying, use or posses-sion of a firearm, any assault or battery (misdemea-nor or felony), kidnapping, arson, extortion, murder, possession of alcoholic beverage, opened alcohol container, marijuana, or narcotic drug while driving, or bailee tampering.

(2) The imposition of towing, storage or other charges in excess of the maximum rate established by the City and County of San Francisco for its contracted tow car firms;

(3) Unauthorized charges added to the tow fee, including use of special equipment, release fees, administrative fees or other charges added to the tow fee;

(4) The towing or removal of any vehicle from public or private storage in other than a duly authorized manner;

(5) Failure to maintain in full force and effect the required bodily injury and property damage insurance;

(6) Employing any person as a tow car operator who has not been issued a valid tow car operator's permit by the San Francisco Police Department;

(7) Knowingly falsifying a tow car firm application or insurance certificate, or intentionally omitting from an application facts which could have resulted in a denial of the permit;

(8) Failure to report towed vehicles as required by law and Chief of Police rules;

(9) Falsification of any document used in the course of business as a tow car firm;

(10) Failure to take reasonable steps to prevent violations of the law by employees in the course and scope of their employment; [or]

(11) Failure to permit peace officers the ability to inspect the tow car firm premises or operations thereof.

*Id.* § 3056.

If a vehicle is towed from private property, the tow firm is required to notify authorities within thirty minutes and provide identifying information on the vehicle, the location where the vehicle is being stored, contact information, and the name of the person authorizing the tow. *Id.* § 3057. Permit holders are required periodically to submit proof of insurance for all businesses vehicles, and to notify the police department of changes in the number of trucks and associated truck drivers. *Id.* § 3058. A peace officer may inspect a firm's tow trucks for code and safety violations. *Id.* § 3059. And, as with the individual tow truck driver permits, a towing firm permit lasts for a year and is renewable annually upon payment of an annual fee.[6] *Id.* § 3062.

When a vehicle has been towed, Article 30.1 also requires tow firms to provide information to towed-vehicle owners by displaying and making available a brochure "in a conspicuous place in the location where a vehicle owner must come to reclaim their towed vehicle." *Id.* § 3055.2(c). The brochure, developed by the police department, contains a summary of relevant California law, "including the maximum rate that can be legally charged for a private property tow and the rights and responsibilities of all parties who participate in towing from private property: real property owners, vehicle owners, tow car operators and tow car firms." *Id.* § 3055.2(b). In promulgating the brochure requirement in 2009, the San Francisco Board of Supervisors made the following findings:

---

[6]As of July 2012, the initial permit fee for a tow car firm was $1,013, with an annual license fee of $546 for the first tow truck, and $217 for each additional tow truck. *See* S.F. Police Code §§ 2.26-.27. The initial permit fee increased from $575 to $1,013 on July 1, 2010, as did other fees.

(i) that there are frequent incidents of illegal towing from private property in San Francisco; and

(ii) that there is a significant risk to the safety of residents and visitors when illegal towing from private property occurs at night; and

(iii) that there is a risk to public health and safety when the vehicles of senior citizens and persons with disabilities are illegally towed from private property; and

(iv) that illegal towing from private property affects vulnerable populations when people of limited economic means are required to pay hundreds of dollars to recover their vehicle, or are subjected to deficiency claims by collection agencies if they could not afford to pick up their vehicle even though the vehicle was illegally towed; and

(v) that the rights of vehicle owners when their vehicle is towed from private property, as described in the California Vehicle Code, are extremely difficult for citizens and visitors to find and understand, especially for non-English speakers or those who speak English as a foreign language; and

(vi) that there are no accessible resources for people to research their rights and responsibilities with respect to private property tows; and

(vii) that requiring tow car firms to provide information on the legal rights of vehicle owners at the time they reclaim their vehicle would be an effective way of informing vehicle owners of their rights under California law when their vehicle is towed from private property; and

(viii) that preventing illegal conduct by tow car operators when towing from private property would reduce the economic burden on residents and visitors by eliminating the need to go to small claims court after a vehicle owner has already paid to reclaim the vehicle; and

(ix) that consistent adherence to legal towing practices will substantially increase the quality of life for residents and the experience of visitors to San Francisco.

*Id.* § 3055.2(a).

A violation of either § 3050 or § 3055 is a misdemeanor. *Id.* § 3064. And, like Article 30, Article 30.1 contains a severability clause, indicating that if any part of Article 30.1 is found to be invalid, such a finding does not affect the validity of the remaining parts of the Article. *Id.* § 3065.[7]

## B. The CTTA's Preemption Challenge

The CTTA is a nonprofit corporation representing over 1,000 towing companies, including companies doing business in and around San Francisco. It filed this suit against San Francisco in state court, challenging enforcement of the Per-

---

[7]Section 3065 provides:

If any section, subsection, subdivision, paragraph, sentence, clause or phrase of this Article, or any part thereof, is for any reason held to be unconstitutional or invalid or ineffective by any court of competent jurisdiction, such decision shall not affect the validity or effectiveness of the remaining portions of this Article or any part thereof. The Board of Supervisors hereby declares that it would have passed each section, subsection, subdivision, paragraph, sentence, clause or phrase thereof, irrespective of the fact that any one or more sections, subsections, subdivisions, paragraphs, sentences, clauses or phrases be declared unconstitutional or invalid or ineffective.

mit System. San Francisco removed the action to federal court, as the suit asserted both federal and state law claims. The suit seeks injunctive and declaratory relief as to both Articles 30 and 30.1, asking for (among other relief) "a declaration that San Francisco Police Code sections 3000 et seq. and 3050 et seq. are invalid because they have been preempted by state and federal law" and "an injunction prohibiting the City from enforcing the . . . ordinances." Count One alleges in pertinent part that "[t]he City's permit scheme directly impacts the price, route, and service of the motor carrier members of CTTA, and is therefore preempted by federal law pursuant to the supremacy clause of Article VI of the United States Constitution."[8]

CTTA's primary claim is that the Permit System is preempted by 49 U.S.C. § 14501(c)(1),[9] which provides:

> Except as provided in paragraphs (2) and (3), a State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier . . . .

As stated, "paragraphs (2) and (3)" are exceptions from this preemption. The exceptions relevant to this action are a

---

[8]The Complaint also alleges that "the entire scheme is . . . preempted by state law," that impounding tow cars in violation of "the permit scheme" violates the Fourth Amendment, and that "[t]he City's permit scheme" violates the dormant commerce clause.

[9]The preemption provision at issue is part of the Interstate Commerce Act, as amended by the Federal Aviation Administration Authorization Act of 1994, Pub. L. No. 103-305, § 601, 108 Stat. 1569, 1606, and the ICC Termination Act of 1995, Pub. L. No. 104-88, § 103, 109 Stat. 803, 899. *See City of Columbus v. Ours Garage & Wrecker Serv.*, 536 U.S. 424, 429 (2002) (naming the statute in full); *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 928 (9th Cir. 2003) (same). The parties and this court refer to the statute as the "FAAAA."

"safety exception," an "insurance exception," and a "price exception." They provide that § 14501(c)(1):

> shall not restrict the safety regulatory authority of a State with respect to motor vehicles, . . . or the authority of a State to regulate motor carriers with regard to minimum amounts of financial responsibility relating to insurance requirements and self-insurance authorization; . . . and
>
> . . . does not apply to the authority of a State or a political subdivision of a State to enact or enforce a law, regulation, or other provision relating to the price of for-hire motor vehicle transportation by a tow truck, if such transportation is performed without the prior consent or authorization of the owner or operator of the motor vehicle.

49 U.S.C. § 14501(c)(2)(A) & (C).

It bears emphasizing that the CTTA challenges the Permit System itself — the basic requirement for tow truck drivers and towing firms to obtain permits, the corresponding conditions and requirements to maintain permits, the penalties for violating provisions, and the fees charged for the permits. Although it took issue with many permit conditions, however, the CTTA does not specifically seek to invalidate particular aspects of the Permit System. It does not, for example, specifically ask the court to excise the requirement for tow firms to display brochures explaining towing laws in different languages (S.F. Police Code § 3055.2), or eliminate check fraud from the list of disqualifying convictions (S.F. Police Code § 3054(3)). Rather, the CTTA seeks, on behalf of its members, to operate in San Francisco without municipal towing permits at all (it recognizes, however, that it would still have other obligations such as compliance with state and local licensing laws). Indeed, it admitted forthrightly at oral argument that its primary concern is financial — the relatively

high fees its members have to pay for towing permits, and the costs that it claims duplicate other costs its members pay for background checks and other requirements to obtain similar California motor carrier permits or other licenses.

## C.   The District Court Decision

The district court granted in part and denied in part cross-motions for summary judgment. *See Cal. Tow Truck Ass'n v. City & Cnty. of S.F.*, No. C 10-03184 CRB, 2010 WL 5071602 (N.D. Cal. Dec. 7, 2010).[10] Consistent with the focus of the briefing, the district court addressed the Permit System as a whole. The district court distinguished between three groups of tow drivers and tow firms:

> (1) those "passing through" the City; (2) those engaged in *consensual* tows in the City; and (3) those engaged in *non-consensual* tows in the City. Consensual towing involves an agreement between the car owner and the tow truck driver. Non-consensual towing involves towing, often from private lots, improperly or "illegally" parked cars. In non-consensual tows the car owner typically does not know that his car has been towed until he comes to retrieve it and it is not there.

*Id.* at *2 (footnote omitted). The district court declared that:

---

[10]Aside from the conclusions regarding preemption discussed in this Opinion, the district court granted summary judgment to San Francisco on CTTA's dormant commerce clause and Fourth Amendment claims. The district court also declined to exercise supplemental jurisdiction over the state law claims and remanded those claims to state court. *See, e.g.*, *Acri v. Varian Assocs.*, 114 F.3d 999, 1001 (9th Cir. 1997) (en banc). These other rulings were not appealed, and thus we address only Count One — whether the Permit System is preempted by the FAAAA and thus violates the Supremacy Clause.

the City's Permit System is preempted to the extent it applies to drivers and/or firms engaged in consensual tows or tows passing though the City. The City remains free to apply its Permit System to drivers and firms engaged in non-consensual towing in the City.

*Id.* at *7 (footnote omitted). As to tows "passing through the City," the district court noted that

tows passing through the City are tows that originate and conclude outside the City. If a non-consensual tow originates or concludes in the City, that driver and any tow firm he is associated with are still subject to the Permit System.

*Id.* at *7 n.7. It further noted that

The City can continue to apply the Permit System to drivers and firms engaged in both consensual and non-consensual towing. The Permit System is preempted only to the extent it is applied to drivers and firms engaged exclusively in consensual towing.

*Id.* at *7 n.8. The court enjoined San Francisco "from applying the Permit System to drivers and/or firms engaged exclusively in consensual towing or merely passing through the City," although it stayed the injunction pending appeal. *Id.* at *1. These timely cross-appeals followed.

## II. *JURISDICTION AND STANDARD OF REVIEW*

The CTTA's preemption challenge presents a federal question under 28 U.S.C. § 1331. *See, e.g.*, *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 n.14 (1983) ("A plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is pre-empted by a federal statute . . . presents a federal question which the federal courts have

jurisdiction under 28 U.S.C. § 1331 to resolve."); *Cal. Shock Trauma Air Rescue v. State Comp. Ins. Fund*, 636 F.3d 538, 543 (9th Cir. 2011) (recognizing that "the presence of a state official [as a defendant] is crucial to the reasoning in *Shaw*"). The court has appellate jurisdiction under 28 U.S.C. § 1291.

The court reviews a district court's decision regarding federal preemption de novo. *Tillison v. Gregoire*, 424 F.3d 1093, 1098 (9th Cir. 2005). The court also reviews the district court's interpretation and construction of the FAAAA de novo. *Id.*

## III.  *DISCUSSION*

### A.  FAAAA Preemption and Applicable Exceptions

**[1]** As set forth above, the FAAAA generally preempts state and local laws "related to a price, route, or service of any motor carrier." 49 U.S.C. § 14501(c)(1). It is undisputed that tow truck firms are "motor carriers" and that the Permit System, or at least aspects of that system, are "related to a price, route, or service" of a motor carrier.

**[2]** The action thus centers around the exceptions to FAAAA preemption. As set forth above, the "safety exception" in § 14501(c)(2)(A) permits laws related to "the safety regulatory authority of a State with respect to motor vehicles." The "insurance exception" in § 14501(c)(2)(A) allows state laws "relating to insurance requirements and self-insurance authorization." And the "price exception" in § 14501(c)(2)(C) saves from preemption state or local laws "relating to the price of for-hire motor vehicle transportation by a tow truck, if such transportation is performed without the prior consent or authorization of the owner or operator of the motor vehicle" (*i.e.*, "non-consensual" towing). Although all three exceptions are relevant, ultimately the action turns on the broader safety exception, which we describe next.

## B.  The "Safety Exception"

The test for determining whether to apply the safety exception derives from *City of Columbus v. Ours Garage & Wrecker Service*, 536 U.S. 424, 429 (2002). *Ours Garage* held that the safety exception can apply to ordinances enacted by municipalities, even though § 14501(c)(2) refers only to "the safety regulatory authority of a *State*." *Id.* at 428 (emphasis added). Prior to *Ours Garage*, many courts had indeed restricted the safety exception to state laws, leaving local laws preempted even if enacted for safety reasons. *See, e.g.*, *Tocher v. City of Santa Ana*, 219 F.3d 1040, 1051 (9th Cir. 2000); *Petrey v. City of Toledo*, 246 F.3d 548, 563-64 (6th Cir. 2001).

*Ours Garage* emphasized that "[p]reemption analysis 'start[s] with the assumption that the historic police powers of the States [(*e.g.*, laws protecting public safety)] were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.' " 536 U.S. at 438 (second alteration in original) (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996)). Such police powers have historically been entrusted by states to local government units, which "are created as convenient agencies for exercising such of the governmental powers of the State as may be entrusted to them in its absolute discretion." *Id.* at 437 (quoting *Wisc. Pub. Intervenor v. Mortier*, 501 U.S. 597, 607-08 (1991)) (internal quotation marks omitted). *Ours Garage* examined the safety exception's purpose, which was "to ensure that [the FAAAA's] preemption of States' economic authority over motor carriers of property . . . 'not restrict' the preexisting and traditional state police power over safety." *Id.* at 439 (quoting 49 U.S.C. § 14501(c)(2)(A)).

**[3]** At the same time, however, *Ours Garage* "also warned that states and municipalities could not hide economic regulation under the guise of safety regulation." *VRC LLC v. City of Dallas*, 460 F.3d 607, 612 (5th Cir. 2006). In that context,

*Ours Garage* "reiterate[d] that § 14501(c)(2)(A) shields from preemption only 'safety regulatory authority' . . . . Local regulation of prices, routes, or services of tow trucks that is not *genuinely responsive to safety concerns* garners no exemption from § 14501(c)(1)'s preemption rule." 536 U.S. at 442 (emphasis added).[11] And so, the basic test for whether the safety exception applies is whether a challenged regulation is "genuinely responsive to safety concerns." If so, it is not preempted.

## C.   "Genuinely Responsive to Safety Concerns" — a Two-Part Test

Applying that basic test, however, can be challenging — courts have articulated different formulations of how to determine if a law is "genuinely responsive to safety concerns." All agree that the focus begins with intent, *i.e.*, "whether the purpose and intent of the body passing the law at issue, whether state or municipality, was truly safety." *Tillison v. City of San Diego*, 406 F.3d 1126, 1129 (9th Cir. 2005); *see also Gregoire*, 424 F.3d at 1101. "In making that determination, we must consider any specific expressions of legislative

---

[11]*Ours Garage* recognized that, if construed too broadly, the exception could swallow the rule. In that regard, it points out that 49 U.S.C. § 31141 "affords the Secretary of Transportation a means to prevent the safety exception from overwhelming the lawmakers' deregulatory purpose." 536 U.S. at 441. It explained:

> That provision authorizes the Secretary to void any "State law or regulation on commercial motor vehicle safety" that, in the Secretary's judgment, "has no safety benefit . . . [or] would cause an unreasonable burden on interstate commerce." §§ 31141(a), (c)(4); *see also* § 31132(8) (" 'State law' includes [for the purposes of § 31141] a law enacted by a political subdivision of a State"); § 31132(9) (parallel definition of "State regulation"). Under this authority, the Secretary can invalidate local safety regulations upon finding that their content or multiplicity threatens to clog the avenues of commerce.

*Id.* at 441-42 (alterations in original).

intent in the statute itself as well as the legislative history, and we must assess any purported safety justifications asserted by the state or municipality in light of the existing record evidence." *Loyal Tire & Auto Ctr., Inc. v. Town of Woodbury*, 445 F.3d 136, 145 (2d Cir. 2006); *see also Auto. Club of N.Y., Inc. v. Dykstra*, 520 F.3d 210, 215 (2d Cir. 2008) (per curiam).

Although not in a towing context, the Ninth Circuit summarized the analysis as follows:

> We must ask if the regulator "was acting out of safety concerns." That is, we must consider whether the purpose and intent was "truly safety." But that does not mean that we are required to take the regulator at its word; we need to go further with the analysis. We must still decide whether the regulation is genuinely responsive to safety concerns.

*Am. Trucking Associations v. City of L.A.*, 559 F.3d 1046, 1053-54 (9th Cir. 2009) ("*ATA I*") (citations omitted).[12]

---

[12]*ATA I* was the first of three Ninth Circuit opinions in long-running (and ongoing) litigation against the Ports of Los Angeles and Long Beach challenging comprehensive "concession agreements" concerning drayage and trucking operations at those ports. We refer to *American Trucking Associations v. City of Los Angeles*, 559 F.3d 1046 (9th Cir. 2009), as "*ATA I*"; *American Trucking Associations v. City of Los Angeles*, 596 F.3d 602 (9th Cir. 2010), as "*ATA II*"; and *American Trucking Associations v. City of Los Angeles*, 660 F.3d 384 (9th Cir. 2011), *petition for cert. filed*, 80 U.S.L.W. 3404 (U.S. Dec. 22, 2011) (No. 11-798), as "*ATA III*." At this time, the Supreme Court has requested the position of the Solicitor General on the petition for certiorari in *ATA III*, and the petition is still pending.

The CTTA appears to advocate treating *ATA I*'s formulation as creating a new two-part test (which it believes is necessary after *Rowe v. New Hampshire Motor Transport Association*, 552 U.S. 364 (2008)). It reads *ATA I* as meaning that a court asks first whether the regulation is intended to address safety concerns, and then assesses whether it is genuinely

Most recently, *ATA III* refined the inquiry by analyzing "mixed motives" — a situation where regulators were motivated by environmental concerns *and* safety concerns. *ATA III* held that "[t]he presence of such mixed motives . . . does not preclude the application of the safety exception, provided that the State's safety motives are not pre-textual." 660 F.3d at 405. Indeed, asking whether a proffered safety motive is "not pre-textual" is equivalent to asking whether a law is "genuinely responsive" to safety concerns. Further, after identifying the safety motive, *ATA III* upheld the challenged provision because it had a "logical connection" to motor vehicle safety. *Id.*

Allowing for "mixed motives" makes sense, for in reality lawmakers may have multiple reasons for enacting laws. For example, in *VRC LLC*, the Fifth Circuit upheld an aspect of a towing ordinance (requiring signage warning drivers of a threat of towing) against a preemption challenge based upon the safety exception. 460 F.3d at 615-16. In so doing, *VRC LLC* recognized that "municipalities are accomplishing some economic regulation, or more precisely consumer protection, while making findings about safety." *Id.* at 615. Having such multiple reasons is not fatal because "safety and consumer protection are not mutually exclusive categories." *Id.* Rather,

---

responsive to safety concerns. Such a formulation, however, is circular. These statements in *ATA I* are merely a different way of articulating the same test.

In this regard, the CTTA also argues that *Rowe* requires the safety exception to be read narrowly. But *Rowe* did not concern the safety exception, and certainly did not overrule *Ours Garage*, which explained that the safety exception is *not* to be construed narrowly. *See* 536 U.S. at 440 ("A congressional decision to enact both a general policy that furthers a particular goal and a specific exception that might tend against that goal does not invariably call for the narrowest possible construction of the exception. Such a construction is surely resistible here, for § 14501(c)(1)'s preemption rule and § 14501(c)(2)(A)'s safety exception to it do not necessarily conflict.").

it sufficed that "the City's safety concerns [were] real enough that the [Fifth Circuit was] convinced that they are both reasonably related and genuinely responsive to safety concerns." *Id.*

To synthesize, courts apply a two-part inquiry to determine whether a law is "genuinely responsive to safety concerns." First, courts consider available legislative or regulatory intent — ask whether safety relating to motor vehicles was truly a concern. Second, courts assess the nexus between the provision at issue and the safety concern — ask whether the regulation sufficiently "responds to" the concern. The first step examines any "expressions of legislative intent," including (1) the particular language of the statute or regulation being challenged, and any explicit statutory or regulatory findings in the provision; and (2) available legislative or regulatory history (*e.g.*, committee reports, or statements of lawmakers). Once a safety motivation is identified, the second step looks to "the existing record evidence" to determine whether there is a "logical" or "genuine" connection between the regulation and the safety justification, or, instead, whether the purported safety justification is a pretext for undue economic regulation. The more attenuated or speculative the connection, the more likely it will be that a court will find the purported safety motives "illusory or pretextual" and that the safety justification will not withstand scrutiny. *See id.*

## D.    Method of Analysis — Provision-by-Provision

[4] Of particular importance here — as explained in *ATA I* — a court must analyze a challenge to a comprehensive law on a provision-by-provision basis. That is, where a multifaceted law or regulation is challenged as a whole, it is still necessary to analyze each of its essential or major component parts. Upholding a multi-part regulatory scheme necessarily upholds its components, and "the mere fact that one part of a regulation or group of regulations might come within an exception to preemption does not mean that all other parts of

that regulation or group are also excepted." *ATA I*, 559 F.3d at 1055. "Were it otherwise, a single valid excepted provision would allow a vast amount of nonexcepted provisions to stand." *Id.* Similarly, the mere fact that one part of the regulatory scheme is preempted does not mean that other parts of the scheme are preempted, or that the scheme as a whole is preempted.

In the original district court decision in the *ATA* litigation, for example, the district court (relying on the safety exception) rejected an FAAAA preemption challenge to mandatory comprehensive "concession agreements" for drayage trucking services at the Ports of Los Angeles and Long Beach. *Id.* at 1049. The suit sought to enjoin the concession agreements as a whole, whereas the agreements consisted of comprehensive and varied licensing provisions regulating all manner of drayage services such as air quality, performance, security, safety, trucking identification, parking, maintenance, and insurance — all with a "principal motivating factor" of environmental and public health concerns. *Id.* at 1049 & n.5. Although some provisions might have had safety-related motivations, *ATA I* ultimately remanded because the district court did not address specific provisions of the concession agreements. *Id*. at 1054. Rather, "when preemption is claimed, a court must pay careful attention to the particular provisions that a state or local entity seeks to impose upon motor carriers." *Id.* "[T]he district court legally erred in not examining the specific provisions of the Concession agreements." *Id*. at 1057.

## E.  The District Court's Application of the Safety Exception to the Permit System

### 1.  *Application of the Two-Part Test*

Here, the district court carefully applied the basic test described above, *i.e.*, it analyzed whether the Permit System was "genuinely responsive to safety concerns" by first examining expressions of legislative intent, and then determining

whether the Permit System was responsive to those articulated safety concerns.

The district court looked to findings the Board of Supervisors made in 2009 when it amended Article 30.1 to add the brochure requirement in S.F. Police Code § 3055.2. Among the findings were that "there is a significant risk to the safety of residents and visitors when illegal towing from private property occurs at night" and "there is a risk to public health and safety when the vehicles of senior citizens and persons with disabilities are illegally towed from private property." S.F. Police Code § 3055.2(a)(ii) & (iii). These findings are explicitly safety related, although the extent to which they should be relied upon to evidence legislative intent with respect to parts of the permitting scheme adopted earlier is an open question.

Other findings in § 3055.2 have more implicit safety motivations. The district court cited the following: "there are no accessible resources for people to research their rights and responsibilities with respect to private property tows" and "requiring tow car firms to provide information on the legal rights of vehicle owners at the time they reclaim their vehicle would be an effective way of informing vehicle owners of their rights under California law when their vehicle is towed from private property." *Id.* § 3055.2(a)(vi) & (vii).

The district court concluded that these findings together indicate that the San Francisco Board of Supervisors was concerned, at least in significant part, with public safety in "illegal towing" in particular (and more generally with non-consensual towing) when it amended the Permit System to add the brochure requirement.

The district court also found "expressions of legislative intent" in the Permit System's implementing legislation — the California statute that authorized San Francisco to create and implement the Permit System in the first place. In this

regard, California authorizes its local governments to regulate tow truck firms and operators by creating licensing schemes (consistent with the Supreme Court's observation in *Ours Garage* that states historically entrust local government units to exercise traditional police powers, *see* 536 U.S. at 437). *See* Cal. Veh. Code § 21100(g).[13]

At the second step, the district court examined whether the Permit System "responds to" the identified motor vehicle safety goals "in light of the record evidence" and other factors. It did so by assessing a five-page declaration of Sergeant William Coggan, the Commanding Officer of the Permit Section of the San Francisco Police Department, who reviews tow truck permit applications, conducts hearings on the applications, and investigates the conduct of tow companies and drivers under the Permit System. The court reviewed Sgt. Coggan's testimony, which indicated that aspects of the Permit System were, at least in part, responsive to articulated safety concerns.

Applying the two-part analysis, the district court concluded that the safety exception applies to non-consensual towing

---

[13]California Vehicle Code § 21100 provides that:

    Local authorities may adopt rules and regulations by ordinance or resolution regarding the following matters:

. . . .

    (g)(1) Licensing and regulating the operation of tow truck service or tow truck drivers whose principal place of business or employment is within the jurisdiction of the local authority . . . .

    (2) The Legislature finds that the safety and welfare of the general public is promoted by permitting local authorities to regulate tow truck service companies and operators by requiring licensure, insurance, and proper training in the safe operation of towing equipment, thereby ensuring against towing mistakes that may lead to violent confrontation, stranding motorists in dangerous situations, impeding the expedited vehicle recovery, and wasting state and local law enforcement's limited resources.

and upheld the Permit System in that regard (*i.e.*, those doing *any* non-consensual towing need a permit). Specifically, it concluded that the available legislative findings and history set forth safety concerns as to non-consensual towing, and the Permit System was sufficiently responsive to those concerns. On the other hand, the district court concluded that the safety exception does not apply to *consensual* towing because there are no "expressions of legislative intent" indicating that lawmakers were concerned about safety as to that type of towing. With nothing from which to garner a safety intent, the district court determined that as to consensual towing San Francisco failed at the first step of the analysis.[14]

## 2.   *The District Court's Failure to Comply With* **ATA I**

[5] But, as careful as the district court was to remain steadfast to the two-part test, it nevertheless failed to analyze the Permit System's essential individual provisions as required by *ATA I*. That is, it "legally erred in not examining the specific provisions" of the Permit System. *ATA I*, 559 F.3d at 1057; *see also ATA II*, 596 F.3d at 605-06 (agreeing with the district court's decision that specifically analyzed each of disputed provisions and considering whether the Port of Los Angeles was acting out of safety concerns when it enacted each requirement of the concession agreements). If the district court had examined each provision individually, it might have concluded that particular provisions could not survive an application of the two-part test; they may not be "genuinely

---

[14]The district court also briefly invoked the insurance and price exceptions. *Cal. Tow Truck Ass'n*, 2010 WL 5071602, at *3. Its Order states that "[k]eeping tabs on drivers and firms engaged in non-consensual towing via a permit system makes it easier for the City to ensure that insurance requirements are being met and reasonable fees are being charged." *Id.* But it did not attempt to justify the entire Permit System (even as applied only to non-consensual towing) based only on those exceptions. Rather, the district court reasoned that the Permit System's "provisions relating directly or indirectly to fees and insurance dovetail with the broader safety-related purposes of the Permit System." *Id.*

responsive to safety concerns" (or they may not even be pre-empted at all). And it is a separate question whether the entire Permit System can be justified if some of its provisions are rendered invalid. "Were it otherwise, a single valid excepted provision [could] allow a vast amount of nonexcepted provisions to stand." *ATA I*, 559 F.3d at 1055.

In this regard, the Permit System's severance provisions allow a court, upon individual examination, to sever a particular provision if it would not affect the Permit System as a whole. On the other hand, if major provisions are preempted, "it may not be practicable to leave the remaining portions standing." *Id.* at 1060 (citing *United States v. Manning*, 527 F.3d 828, 840 (9th Cir. 2008)). *Manning* indicates that, even given a savings clause, a statute can be preempted where its "most significant" parts are excised. *Manning*, 527 F.3d at 840. To answer that question, *ATA I* "[left] it to the district court on remand to determine whether [an] injunction should run against all or only a portion of [the] Concession agreement." *ATA I*, 559 F.3d at 1060. We do the same here.

We recognize that the district court may have been led astray by the manner in which the case was presented to it. The CTTA did not ask the district court to invalidate specific provisions of the Permit System. Indeed, although it did so on appeal, the CTTA did not cite *ATA I* and its requirement to analyze individual provisions to the district court. But, in examining whether the Permit System is preempted, we can raise these questions even if the district court was not specifically asked to do so. *See N.Y. Susquehanna & W. Ry. Corp. v. Jackson*, 500 F.3d 238, 256-57 (3d Cir. 2007) ("Susquehanna object[s] to this sort of remand by arguing that the State did not ask the District Court to examine the regulations individually. That is irrelevant. . . . Nothing prevents us, in our *de novo* review of the District Court's application of law to facts . . . from recognizing that the law in this area [of preemption] admits of more nuance than any of the parties . . . argued and fashioning our remand accordingly.").

**[6]** We are not suggesting that the district court must analyze every sentence of the Permit System, line by line. Rather, because the CTTA challenges the Permit System as a whole, the district court is required to analyze the major provisions identified by the CTTA and address whether the Permit System can survive, after severing provisions, if any, that are preempted (or not saved from preemption by a statutory exception). It may be that the Permit System's essential requirement to obtain permits can be justified based on San Francisco's "safety regulatory authority." But here the Permit System as a whole — with its components, conditions, and burdens — was upheld in part and invalidated in part without analyzing those key provisions. Under *ATA I*, in deciding whether the Permit System itself is preempted, the district court must address the Permit System's components. Indeed, it should start with whether a particular provision is even subject to preemption in the first place. *Cf. ATA III*, 660 F.3d at 403-04 (holding that the "financial capability" provision was not preempted in the first place because it did not relate to rates, routes, or services, so there was no need to consider the safety exception). In short, *ATA I* requires us to remand the action for the district court to analyze the Permit System's provisions in the first instance.

## F.  Applicable Preemption Principles

The following principles are applicable to the district court's preemption analysis on remand.

### 1.  Inferring Legislative Intent

In addressing "consensual towing," the district court found the safety exception inapplicable at the first step of the two-part test, ostensibly at least in part because San Francisco could point to no "expressions of legislative intent" indicating a safety motivation as to consensual towing. The district court recognized that the Permit System contains some general safety provisions regarding, for example, inspections and tow-

ing equipment. But it stated that, as a whole, there "are no legislative findings that general towing safety motivated the Board of Supervisors to create the Permit System." *Cal. Tow Truck Ass'n*, 2010 WL 5071602, at *5. It apparently felt constrained by its reading of the two-part test, as it reasoned:

> The Court's conclusion on this issue [of consensual towing] stems from its understanding of the analysis it is required to undertake to determine whether a regulation is genuinely responsive to safety concerns. . . . [T]he test, as the Court understands it, requires the Court to review legislative expressions of intent and then determine whether the regulation fairly serves to address the identified safety concerns.
>
> To reiterate, the legislative findings reveal a concern about safety in the context of non-consensual tows, and the Permit System helps the City address those concerns. But the Court cannot go so far as to say that the purpose and intent of the Board of Supervisors in applying the Permit System to firms and drivers engaged only in consensual towing was "truly related to safety" or that in applying the Permit System to such firm and drivers the Board of Supervisors "was acting out of safety concerns."

*Id.* (citation omitted).

In this regard, the first step addresses whatever traditional sources of legislative intent are available.[15] But this step also

---

[15]Evidence of legislative intent generally arises from the contemporaneous record, although a court may consider testimony from members of the legislative body in question regarding that record. *See, e.g.*, *ATA III*, 660 F.3d at 407 n.16 ("In assessing the Port's motivations, we focus exclusively on the orders and published documents issued by the Port, and on statements made at trial by high-ranking Port officials."); *Galactic Tow-*

allows for the situation where history is lacking — especially at a local level where committee reports or municipal statements might not be published. That is, merely because a safety rationale is not documented does not necessarily mean the safety exception cannot apply. Sometimes a safety justification is so obvious that it need not be stated — intent can be obvious from the subject of the regulation itself, as well as from the surrounding circumstances. *See Gregoire*, 424 F.3d at 1102-03 (holding that a Washington towing regulation was covered by the safety exception where, although the "legislature did not expressly state a public safety purpose for enacting [the] legislation," it was "reasonable to conclude" from the statutory language, which was "practically identical in wording to other patrol and non-consensual towing regulations held to be safety-related," that the legislature "had public safety in mind when it passed" the regulation). It would elevate form over substance to invalidate permit requirements merely because local lawmakers did not articulate the obvious. Courts often have to infer legislative intent in similar situations. *See Harrison v. PPG Indus.*, 446 U.S. 578, 592 (1980) ("[I]t would be a strange canon of statutory construction that would require Congress to state in committee reports or elsewhere in its deliberations that which is obvious on the face of a statute."); *Pub. Citizen v. Farm Credit Admin.*, 938 F.2d 290, 292 (D.C. Cir. 1991) (per curiam) ("[S]ilence in legislative history is almost invariably ambiguous. If a statute is plain in its words, the silence may simply mean that no one in Congress saw any reason to restate the obvious.") (quoting

*ing, Inc. v. City of Miami Beach*, 341 F.3d 1249, 1253 (11th Cir. 2003) (per curiam) (providing that where the text of a city ordinance "expressly articulates a public safety purpose," a court may also consider affidavits of City officials containing "relevant information on how the challenged sections of the City's vehicle towing ordinance affect safety concerns." (emphasis omitted)). A court should be wary, however, about crediting post hoc safety rationalizations that conflict with the contemporaneous legislative record. *See VRC LLC*, 460 F.3d at 614; *Loyal Tire & Auto Ctr., Inc. v. Town of Woodbury*, 445 F.3d 136, 146 (2d Cir. 2006).

*Avco Corp. v. U.S. Dep't of Justice*, 884 F.2d 621, 625 (D.C. Cir. 1989)) (internal quotation marks omitted).

To be clear, we are not implying that any particular provision of the Permit System should or should not be preempted. On remand, the slate is clean for the district court to analyze the Permit System and its individual provisions in light of the factors set forth in this Opinion (including intervening caselaw such as *ATA III* and its discussion of "mixed motives").

### 2.    *Preemption "As-Applied"*

In analyzing whether the Permit System is preempted by the FAAAA, the district court at the outset distinguished between different types of towing — non-consensual, consensual, and "passing through" — and analyzed the safety exception in that light. It did so, however, without addressing an open issue — whether a federal law can ever preempt state law on an "as applied" basis, that is, whether it is proper to find that federal law preempts a state regulatory scheme sometimes but not at other times, or that a federal law can preempt state law when applied to certain parties, but not to others. Nor have the parties briefed this issue. Rather, CTTA has repeatedly asserted that it is making a facial challenge to the permit scheme. On remand, the district court should consider whether it can resolve the preemption questions without analyzing them on an "as applied" basis, and if not, whether further briefing is necessary.

### G.    The Permit System's Potential Effect on Tow Trucks Simply "Passing Through" San Francisco

Lastly, San Francisco asserts on cross-appeal that the district court lacked jurisdiction to enjoin it from enforcing the Permit System against tow trucks merely passing through San Francisco, *i.e.*, where a driver neither picks up nor drops off a tow in the City. This argument has merit. Such a claim is

not ripe, and thus the CTTA lacks standing. *See Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc) ("Whether the question is viewed as one of standing or ripeness, the Constitution mandates that prior to our exercise of jurisdiction there exist a constitutional 'case or controversy,' that the issues presented are 'definite and concrete, not hypothetical or abstract.' " (quoting *Ry. Mail Ass'n v. Corsi*, 326 U.S. 88, 93 (1945)).

The undisputed evidence establishes that San Francisco does not require tow truck drivers and tow firms to obtain a permit just to pass through San Francisco. According to Sgt. Coggan, "[t]he City only requires tow companies and tow truck drivers to obtain permits if they routinely conduct business in the City." He further declares:

> Nor does the City have a policy of citing tow companies or tow truck drivers for "passing through" San Francisco without a permit. As far as I am aware, the City has never cited a tow company or tow truck driver for "passing through" San Francisco without a permit.

And in its briefing before the district court, San Francisco confirmed that "the [San Francisco] Police Department does not enforce, and never has enforced the permit requirement in this fashion."

It follows that the district court lacked jurisdiction (as do we) over a challenge by passers-through. "In assuring that [the] jurisdictional prerequisite is satisfied, we consider whether the plaintiffs face 'a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement,' or whether the alleged injury is too 'imaginary' or 'speculative' to support jurisdiction." *Thomas*, 220 F.3d at 1139 (citation omitted) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)). CTTA has not shown a realistic danger of enforcement here, and accord-

ingly it lacks standing to bring this challenge because there is no injury in fact.

The CTTA offers evidence that some of its members who lack San Francisco towing permits avoid driving through San Francisco with tows because of its Permit System. But such claimed injury (fear of enforcement) is "imaginary" and "speculative" where the prosecuting authorities have not "communicated a specific warning or threat to initiate proceedings," and where there is no "history of past prosecution or enforcement under the challenged statute." *Thomas*, 220 F.3d at 1139. "When plaintiffs do not claim that they have ever been threatened with prosecution, that a prosecution is likely, or even that a prosecution is remotely possible, they do not allege a dispute susceptible to resolution by a federal court." *Id.* at 1140 (quoting *Babbitt*, 442 U.S. at 298-99) (internal quotation marks omitted). Moreover, "[t]he mere existence of a statute, which may or may not ever be applied to plaintiffs, is not sufficient to create a case or controversy within the meaning of Article III." *San Diego Cnty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996) (alteration in original) (quoting *Stoianoff v. Montana*, 695 F.2d 1214, 1223 (9th Cir. 1983)) (internal quotation marks omitted).

**[7]** In short, the court lacks jurisdiction to address whether the Permit System can be enjoined against those simply passing through San Francisco because CTTA has not demonstrated the requisite standing to bring such a challenge. On remand, unless new evidence is presented to the district court showing that San Francisco is now enforcing, or threatens to enforce, the Permit System as to tow truck drivers merely passing through, the district court need not specifically address this aspect of the Permit System.

## IV.    *CONCLUSION*

*ATA I* requires a provision-by-provision preemption analysis of San Francisco's Permit System regulating tow truck

drivers and towing firms to determine whether the entire system is preempted by federal law. Accordingly, we vacate and remand for further proceedings. The parties are to bear their own costs on appeal.

**VACATED AND REMANDED.**